In the Matter of DALE KOWATCH, Respondent, v JOAN JOHNSON, Appellant. [891 NYS2d 534]—

Stein, J.

Pursuant to a modification order entered in May 2007 while

petitioner (hereinafter the father) was incarcerated, Family Court awarded sole custody of the parties' daughter (born in 1999) and son (born in 2001) to respondent (hereinafter the mother) and granted the father weekend visitation upon his release from incarceration. After his release, the father married his long-term girlfriend (hereinafter the stepmother), with whom he has a son. The father, the stepmother and their son all live together in Arkville, Delaware County. In April 2008, the mother moved from the Town of Stamford, Delaware County to the Town of Catskill, Greene County, taking the parties' children and two of her older children with her.

The father commenced this proceeding for modification of the May 2007 order, alleging that the mother had moved without his permission or the permission of Family Court and that she was denigrating him and the stepmother in the presence of the children. In his petition, the father specifically requested, among other things, a resumption of joint custody as existed prior to his incarceration. After fact-finding and *Lincoln* hearings, Family Court determined that joint custody was inappropriate given the animosity between the parties and awarded custody of the children to the father, with visitation to the mother. The mother now appeals.

We affirm. Family Court correctly found, and the mother concedes, that there has been a change in circumstances since entry of the May 2007 order. After finding that there was a change in circumstances necessitating a modification of that order—including the father's release from incarceration, the mother's move from Delaware County to Greene County, the continued deterioration in the parties' relationship and various behavioral problems exhibited by the children—Family Court then properly proceeded to a best interests analysis (*see Matter of Meyer v Lerche*, 24 AD3d 976, 976-977 [2005]; *see generally Matter of Nikki O. v William N.*, 64 AD3d 938, 939 [2009], *lv dismissed* 13 NY3d 825 [2009]; *Matter of Bronson v Bronson*, 63 AD3d 1205, 1206 [2009]; *Matter of Martin v Martin*, 61 AD3d 1297, 1298 [2009]).

There is a sound and substantial basis in the record to support Family Court's determination that an award of joint custody would not be in the best interests of the children. It was evident from the testimony that the father and mother had significant difficulty communicating with each other and making joint decisions in matters relating to the children (*see Matter of Cobane v Cobane*, 57 AD3d 1320, 1322 [2008], *lv denied* 12 NY3d 706 [2009]). The father testified that the mother was not accommodating with regard to his requests for occasional

changes to the visitation schedule. The father also testified that the mother often prevented him from speaking with the children on the telephone and usually cut off any conversation that the father attempted to initiate with her regarding the children. In response to the father's testimony that he had expressed a desire to obtain counseling for the daughter, the mother testified that she had considered counseling and believed the daughter's emotional difficulties to be caused by the father.

Once Family Court determined that "joint custody was not feasible, it was incumbent upon Family Court to determine a custodial arrangement based upon the best interests of the child[ren] despite the absence" of a petition definitively seeking sole custody (*Matter of Scala v Parker*, 304 AD2d 858, 860 [2003]), since the mother was clearly on notice that both legal and residential custody were at issue[1] (*see Matter of Heintz v Heintz*, 28 AD3d 1154, 1155 [2006]; *see generally Matter of Albanese v Albanese*, 44 AD3d 1117, 1119-1120 [2007]; *compare Matter of Adams v Bracci*, 61 AD3d 1065, 1067 [2009], *lv denied* 12 NY3d 712 [2009] [no notice that legal custody at issue]). "In determining whether a modification will serve the best interests of the children, factors to be considered include maintaining stability in the children's lives, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each parent's past performance, relative fitness and ability to provide for and guide the children's intellectual and emotional development" (*Matter of Siler v Wright*, 64 AD3d 926, 928 [2009] [citations omitted]).

Here, the stepmother testified that the daughter seemed upset and depressed, cried frequently and was reluctant to return to the mother's house after visitation with the father. The father testified that the daughter, perhaps mimicking her older sister, had told him that "she [had] missed her period and might be pregnant." He further testified that the son was having disciplinary problems at school and the stepmother testified that he was uncooperative and had poor hygiene. The evidence showed that the father made consistent and repeated efforts to maintain contact with the son's teachers in order to attempt to forestall his educational difficulties, whereas the mother admitted to cancelling several parent-teacher conferences. Rather than seeking to address their son's concerns, the mother minimized his hyperactivity and inability to follow directions.

Family Court also heard testimony that the father had

---

1. For example, the father testified at the fact-finding hearing that he wanted the children placed with him and the mother's attorney made no objection to such testimony.

maintained the same residence for approximately four years, that the children had friends in the father's neighborhood and cousins who reside nearby and that the children did not know anyone in Catskill before the mother moved there. The father has been in a stable relationship with his current wife for several years, while the mother has had relationships with various men. Although both parties have a history of alcohol abuse, the mother admitted that she continued to drink several times a week, whereas the father was attending Alcoholics Anonymous meetings and was, by all accounts, maintaining his sobriety. There was testimony that the children had reported abuse by two of the mother's older children and that, after one of them struck the parties' daughter with sufficient force to leave a hand print on her back, that child was allowed back into the mother's home after 10 months in foster care. The father testified that the children reported that the mother hit them with a belt, while he relied on time-outs and restrictions of privileges for discipline. Considering the record as a whole and according due deference to Family Court's findings and credibility determinations (*see Matter of Bronson v Bronson*, 63 AD3d at 1206), we find that there is a sound and substantial basis supporting Family Court's determination[2] and we, therefore, decline to disturb it.

Cardona, P.J., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

**2.** Although not determinative, we also note that the Law Guardian supported a change of custody to the father.